**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER REED, | No. 3:18-CV-00377 |
| Plaintiff, | (Judge Brann) |
| v. | |
| WILLIAM WILLIAMS, *et al.,* | |
| Defendants. | |

**MEMORANDUM OPINION**

**OCTOBER 21, 2020**

Plaintiff, Christopher Reed, a state prisoner, presently confined at the Rockview State Correctional Institution ("SCI-Rockview"), in Bellefonte, Pennsylvania, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his First, Eighth and Fourteenth Amendment rights, as well as state law claims of professional medical negligence claims concerning his treatment for a 2007 shoulder injury.[1]  This cause is before the Court on the following: (1) Defendant Morris Houser, Nicki Paul, Jeffrey Rackovan, Diana Simpson, and William Williams' (the "Commonwealth Defendants") motion to dismiss;[2] (2) Defendant Dr. Sobolewski, and Somerset Hospital's (the "Somerset Defendants") motion to dismiss;[3] and (3) Defendant Physician Assistant ("PA") Julie Koltay, and Dr.

---

[1]   Doc. 22.
[2]   Doc. 37.
[3]   Doc. 40.

Symons' (the "Medical Defendants") motion to dismiss, or in the alternative, for summary judgment.[4]  Reed opposes Defendants' motions which are now ripe for disposition.[5]  Having carefully considered the motions and applicable law, the Court will grant the motions to dismiss and deny Reed further leave to file a third amended complaint.[6]

## I.      BACKGROUND

### A.      Relevant Procedural History

After filing his complaint in 2018, Reed filed an amended complaint on February 19, 2019.[7]  My late colleague, the Honorable A. Richard Caputo, dismissed the amended complaint upon screening pursuant to 28 U.S.C. § 1915 but granted Reed leave to file a second amended complaint ("SAC").[8]  Reed filed a SAC, and more than 20 pages of supporting documentation on April 17, 2019.[9]  As noted above, all Defendants have filed potentially dispositive motions challenging the SAC.

---

[4]    Doc. 38.  Originally filed as a motion to dismiss, the Medical Defendants claimed, *inter alia,* the Reed failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Because their submission asked the Court to consider matters outside the pleadings in resolving this claim, the Court put the parties on notice that it would address the exhaustion claim in the context of summary judgment and gave the parties the opportunity to supplement their filings accordingly.  Doc. 45.

[5]    Docs. 43–44.

[6]    As the issues presented in the Medical Defendants' motion to dismiss are dispositive, the Court need not reach the issue sole issue raised in their summary judgment motion, Reeds' alleged failure to exhaust his administrative remedies.

[7]    Docs. 1 and 16.

[8]    Doc. 19 at 7.

[9]    Doc. 22.

**B.      Allegations of the Second Amended Complaint**

On Friday, March 23, 2007, while in the performance of his inmate job, a key-box fell on Reed's right shoulder as he attempted to pry it from a wall.[10]  A nurse immediately evaluated Reed's right shoulder injury and noted limited range of motion in that arm.  She provided Reed with Motrin for pain and referred him to the physician for further evaluation.  On Monday, March 26, 2007, PA Koltay ordered Reed's shoulder x-rayed; the results were negative for bone deformities. Medical staff did not order further diagnostic studies at that time.[11]

Between 2007 and 2016, Reed was under the care of the contract medical care providers at SCI-Rockview, including Dr. Symons and PA Koltay.  He claims Dr. Symons and PA Koltay "failed to diagnose and treat [his] deteriorating right shoulder injury condition"[12] even though he received cortisone injections for pain during this time and an MRI (without contrast) in 2010.[13]  Corrections Health Care Administrator ("CHCA") Williams is faulted for not questioning Reed's medical care providers as to why the MRI study was conducted without the use of contrast dye.[14]

On February 11, 2016, PA Jamie Ficks (non-defendant) saw Reed for ongoing complaints of right shoulder pain.  She ordered a second MRI study of his

---

[10]   Doc. 22 at ¶ 2.
[11]   *Id.* at ¶¶ 4–5, 8–9.
[12]   *Id*. at ¶ 9.
[13]   *Id.* at ¶¶ 6, 8–10.
[14]   *Id.*

shoulder, this time with contrast dye.  The MRI conducted in March 2016 revealed structural damage to Reed's right rotator cuff.[15]

On February 22, 2016, in accordance with the Department of Corrections' ("DOC") Administrative Remedy Grievance Policy, DC-ADM 804, Reed filed Grievance No. 614614 concerning his March 2007 accident.[16]  He alleged that Dr. Symons and "the PA's" were not "th[o]rough" in their initial treatment of his injury or investigating the source of his continuing complaints of shoulder pain and numbness over the course of nine years.  He claims the Medical Defendants and CHCA Williams "should have known to investigate [his injury] further."[17]  He also alleges CHCA Williams should have ordered more tests.  The Medical Defendants' "negligence" caused Reed nine years of pain and lead to the further deterioration of his shoulder.[18]

On February 25, 2016, Grievance Coordinator Rackovan rejected the grievance as untimely filed.  He responded that "[i]f you were not satisfied with the medical care you received in 2007 and 2010, you needed to file a grievance at those times you may not grieve medical treatment dating 6 to 9 years ago."[19]

On July 28, 2016, Dr. Sobolewski, an orthopedic surgeon with privileges at the Somerset Hospital, examined Reed and recommended the surgical repair of his

---

[15]  *Id.* at ¶¶ 11–12.
[16]  *Id.* at ¶¶ 14–15 and 10.
[17]  *Id.*
[18]  *Id.*
[19]  *Id.* at ¶ 16 and 11.

shoulder.  Seven weeks later, Reed inquired as to his surgery date.  CHCA Williams advised, "we are waiting for the surgeon to give us a date."[20]  Reed filed No. 644511 on September 22, 2016, with Grievance Coordinator Paul asserting claims of "medical malpractice"[21] and stating "SCI Rockview['s] medical staff ha[ve] continuously tr[ie]d to avoid the required medical treatment of my right shoulder."  Reed also claims PA Reisinger (non-defendant) told him his surgery date was September 16, 2016, while CHCA Williams told him "the referral has been made and [they were] waiting for the surgeon to give [them] a date."[22]

Deputy Superintendent Houser denied the grievance on October 13, 2016, noting that Reed "received an appropriate, conservative course of treatment for his condition" and that the surgeon has set an October 25, 2016 surgery date.[23]  On October 31, 2016, SCI-Rockview's Facility Manager denied Reed's grievance appeal.[24]

Dr. Sobolewski ultimately repaired Reed's right rotator cuff on October 26, 2016 at the Somerset Hospital.  Reed returned to SCI-Rockview the following day.[25]

---

[20] *Id.*
[21] *Id.* at 13–14.
[22] *Id.* at ¶ 19 and 12–14.
[23] *Id.* at ¶ 20 and 15.
[24] *Id.* at 18.
[25] *Id.* at ¶ 24; Doc. 52 at 18.

The next time Dr. Sobolewski and Reed spoke was during a December 2, 2016 video conference.  Dr. Sobolewski inquired about Reed's physical therapy. Reed, who believed physical therapy would start one week after surgery, advised Dr. Sobolewski that it would not begin until December 21, 2016.[26]  Reed faults Dr. Sobolewski for not contacting the DOC or SCI-Rockview Administration as to why physical therapy was not started earlier.  Reed claims Grievance Coordinator Paul failed to process his December 12, 2016 grievance concerning his lack of timely physical therapy.[27]

Reed filed Grievance No. 654538 on November 28, 2016 with Grievance Coordinator Paul after he received one of the two "venda cards" (used to purchase photocopies within the institution) he purchased from commissary.  He claimed the withholding the second "venda card" violated his "right to access the court by withholding the availability of the Prisoner/Petitioner from copying legal documents for pending litigation."[28]  Grievance Coordinator Paul denied the grievance as "resolved" because Commissary staff issued him a second venda card on December 13, 2016.[29]

On November 28, 2016, Reed sent a request to Grievance Coordinator Paul to review his medical records.  Ms. Paul forwarded the request to Medical Records

---

[26]  Doc. 22 at ¶ 25 and 19.
[27]  *Id*. at ¶¶25–26 and 19.
[28]  *Id*. at 21.
[29]  *Id.* at ¶ 27 and 21–22; Doc. 52 at 24–29.

Supervisor, Diana Simpson.  A week later, Reed sent Ms. Paul a second request to review his medical records.[30]  He filed Grievance No. 660043 on January 8, 2017 claiming staff interfered with his access to the courts by denying him access to his medical records.[31]  CHCA Williams denied Grievance No. 660043 on February 7, 2017 advising that  Ms. Simpson understood Reed as desiring a copy of his medical records, something the DOC does not permit.  CHCA Williams also noted Ms. Simpson arranged for Reed to review his medical records which he did on February 6, 2017.[32]

On January 13, 2017, Reed requested a copy of his medical records from the Somerset Hospital.  The hospital advised Reed of the copying fee for the requested records.  On February 16, 2017, Dr. Sobolewski requested Reed cease all communications with him.  On April 9, 2017, the hospital's invoice "was paid by outside purchase source," but Reed has never received a copy of his file.[33]

On October 18, 2017, Reed filed a medical professional liability complaint in the Commonwealth Court of Pennsylvania against the same Commonwealth, Medical, and Somerset Defendants seeking monetary damages related to the treatment of his March 2007 shoulder injury.[34]  He also asserted an access to courts

---

[30]  Doc. 22 at ¶ 29.

[31]  *Id.* at 23; Doc. 52 at 30–36.

[32]  Doc. 20 at 25.

[33]  *Id*. at ¶ 25, ¶ 32, 26.

[34]  *See Reed v. Pa. Dep't of Corr.*, 489 MD 2017 (docket sheet, available at https://ujsportal.pacourts.us/DocketSheets (last visited October 9, 2020)).  The court takes

claim based on the denial of access to his DOC and Somerset Hospital medical records.[35]  On January 16, 2018, the Commonwealth Court transferred the matter to the Court of Common Pleas of Centre County.[36]  "While the Courts were delaying the process, Mr. Reed filed [his present] 42 U.S.C. § 1983 [action] to preserve [the] Statute of Limitations.  Mr. Reed after finding out the true nature of [his] injury had 2 years to file said suit."[37]  Reed claimed his "right shoulder injury was finally realized and documented on 2/11/16" when a second MRI (with contrast) was ordered.[38]

On October 12, 2018, the Centre County Court of Common Pleas dismissed Reed's claims against the Commonwealth Defendants (Jeffrey Rackovan, Nicki Paul, Morris Houser, William Williamson and Diana Simpson).[39]  As to his medical negligence claims, Reed filed supporting Certificates of Merit ("COM") on October 30, 2018 as to PA Koltay and Dr. Symons as required by Pennsylvania Rule of Civil Procedure 1042.3.[40]  The Medical Defendants filed a motion to strike Reed's Certificate of Merit and sought entry of judgment by non-pros.  The Somerset Defendants filed a motion for summary judgment.  Both motions

---

judicial notice of the public docket related to Reed's similarly based petition for review.  *See* Doc. 39–2, Pet.for Review.

[35]   Doc. 39-2.

[36]   *See* Doc. 39-3, *Reed v. Pa. Dept. of Corr.,* No. 2018-0548 (Centre Cnty. Ct. Comm. Pl.) (June 7, 2019, slip op.)

[37]   Doc. 44 at 2, Reed's Opp'n to Defs.' Mot. to Dismiss.

[38]   Doc. 39-2 at ¶ 20(c).

[39]   Doc. 39–3 at 2.

[40]   Doc. 39-4.

attacked Reed's COM affirming that no expert testimony was necessary in the case.  On June 3, 2019, the Centre County Court dismissed Reed's medical malpractice claims against the Medical Defendants (Dr. Symons and PA Koltay) and the Somerset Defendants (Dr. Sobolewski and Somerset Hospital), finding that Reed needed expert testimony to pursue his claim that Defendants' failed to properly treat his 2007 shoulder injury which caused deterioration to his rotator cuff ultimately requiring surgery in 2016.  The Centre County Court held that "[a]s a jury would be required to differentiate between injury caused by the initial incident and injury caused by any alleged negligence on the part of Defendants, expert testimony is necessary in this case."[41]

## II.    STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim.[42]  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations.[43]  The issue in a

---

[41] Doc. 39–3 at 5; Doc. 39–4.
[42] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[43] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail.[44]

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[45] The court need not accept unsupported inferences,[46] nor legal conclusions cast as factual allegations.[47] Legal conclusions without factual support are not entitled to the assumption of truth.[48]

Once the court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a commonsense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face."[49] A "claim has facial

---

[44] *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 Pleading standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element."); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

[45] *Twombly*, 550 U.S. at 555 (alteration in original and internal citations omitted).

[46] *Cal. Pub. Employees Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

[47] *Twombly*, 550 U.S. at 556.

[48] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

[49] *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[50]  A complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion.[51]

## III.   DISCUSSION

### A.   Issue Preclusion Bars Reed's State Law Professional Negligence Claims against the Medical and Somerset Defendants.

Under the Full Faith and Credit Clause, as implemented by 28 U.S.C. § 1738, a federal court must give the same preclusive effect to state court judgments that those judgments would be given in that state's own courts.[52]  The doctrine of issue preclusion, "sometimes called collateral estoppel," "precludes a party from relitigating an issue actually decided in a prior case."[53]  This Court must therefore look to Pennsylvania state law to determine the requirements and effects of issue preclusion on Reed's present claims as to his medical negligence claims.

In Pennsylvania, issue preclusion applies where:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (5) the party against whom it is

---

[50]  *Id.*, 556 U.S. at 678.

[51]  *See* Fed. R. Civ.  8(a)(2); *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

[52]  Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also Walker v. Horn, 385 F.3d 321, 336 (3d Cir. 2004).

[53]  Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140 S.Ct. 1589, 1594 (2020).

asserted has had a full and fair opportunity to litigate the
issue in question in a prior action.[54]

Here, the Medical Defendants assert that the doctrine of issue preclusion

bars Reed's professional medical negligence claims because he brought and lost a

similar suit in the Court of Common Pleas of Centre County, Pennsylvania.[55]

Curiously, Reed did not address the Medical Defendants' collateral estoppel

argument in his opposition materials.  Be that as it may, the Court has carefully

reviewed Reed's state court complaint and his second amended complaint in this

matter and find all the requirements for the application of issue preclusion are

present.

Reed advanced professional medical negligence claims against the Medical

Defendants and Somerset Defendants in his prior state action, which the Court of

Common Pleas of Centre County, Pennsylvania dismissed on June 3, 2019.[56]  Both

actions are based on the same events and allegations; they involve the same

evidence.  The Centre County Court stated:

> Plaintiff has alleged Defendants did not properly treat an
> injury to his shoulder that occurred in 2007 and was
> operated on in 2016.  Plaintiff contends the injury caused
> deterioration over the years.  As a potential jury would be
> required to differentiate between injury caused by the
> initial incident and injury caused by any alleged

---

[54]  *Walker*, 385 F.3d at 337.
[55]  Doc. 34; The affirmative defense of issue preclusion may be raised upon a Rule 12(b)(6)
motion if the defense is apparent on the face of the complaint as it is here.  *See Brody v.
Hankin*, 299 F.Supp.2d 454, 458 (E.D. Pa. 2004), *rev'd on other grounds*, 145 F. App'x 768
(3d Cir. 2005).
[56]  Doc. 39-3 at 6.

> negligence on the part of the Defendants, expert testimony
> is necessary in this case.   Plaintiff has filed binding
> Certificates of Merit alleging no expert testimony is
> necessary.[57]

This state trial court decision counts as a final judgment on the merits.[58]  As the

Medical Defendants suggest, Reed's present action is the proverbial second bite at

the apple with respect to his medical negligence claims.  Based on the above,

Reed's professional medical negligence claims against the Medical and Somerset

Defendants are barred by the doctrine of issue preclusion.

### B.    Reed's Eighth Amendment Claim of Deliberate Indifference to his 2007 Shoulder Injury is Barred by the Statute of Limitations.

In Pennsylvania, the statute of limitations applicable to a claim brought

pursuant to Section 1983 is two years.[59]  A Section 1983 cause of action accrues,

and the statute of limitations begins to run, "when the plaintiff knew or should

have known of the injury upon which [his] action is based."[60]  "The determination

of the time at which a claim accrues is an *objective* inquiry; [the court] ask[s] not

what the plaintiff actually knew but what a reasonable person should have known"

---

[57]  *Id.* at 5.
[58]  *See Cruickshank-Wallace v. CAN Financial Corp.*, 769 F. App'x 77, 81 (3d Cir. 2019)
(dismissal of action after state court disagreed with plaintiffs' certificate of merit decision
that they did not need the testimony of an expert to prove the merits of their legal malpractice
case constitutes a judgment on the merits for *res judicata* purposes).
[59]  *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("The statute of limitations
applicable to § 1983 claims in Pennsylvania is two years."); *see also* 42 PA. CONS. STAT. §
5524.
[60]  *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted).

concerning his injury.[61]  Thus, a Section 1983 "cause of action accrues even though the *full extent* of the injury is not then known or predictable."[62]  In other words, a cause of action accrues "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'"[63]

With respect to prisoner claims, Section 1983's statute of limitations period is tolled while the inmate exhausts his available administrative remedies.[64]  It is also tolled where a defendant prevents the plaintiff from filing his action.  To merit tolling in such a situation, the plaintiff must prove:  "(1) the defendant actively mislead the plaintiff; (2) which prevented the plaintiff from recognizing the validity of h[is] claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to h[is] lack of reasonable due diligence in attempting to uncover the relevant facts."[65]

The "continuing violation doctrine" also presents another exception to the tolling of the limitations.  It provides that, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."[66] "'A continuing violation

---

[61]   *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (emphasis added).

[62]   *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (emphasis added).

[63]   *Id.*, 549 U.S. at 388 (citations omitted).

[64]   *See Pearson v. Sec'y Dept. of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.")

[65]   *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006).

[66]   *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v. Local 514, United Bhd. Of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295) (3d Cir. 1991)).

14

is occasioned by continual unlawful acts, not continual ill effects from an original violation.'"[67]  When evaluating whether a defendant's acts are a continuing practice or isolated event, the court should consider the "subject matter jurisdiction–whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation" and the "frequency–whether the acts are recurring or more in the nature of isolated incidents."[68]  "The continuing violation doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims."[69]

The Commonwealth and Medical Defendants argue Reed's Eighth Amendment claims are time barred.[70]  Aside from noting that he finds it "befuddling" that  Defendants would raise the statute of limitations in his action as they "never brought this up" in the state court, Reed does not address Defendants' argument.[71]

Reed, who again was injured on March 23, 2007, received allegedly unsatisfactory treatment until February 11, 2016, when he "discovered" his injury

---

[67]  *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982) (per curiam) (*abrogated on other grounds by Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) (citing *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)).

[68]  *Cowell*, 263 F.3d at 292; In *Cowell,* the Third Circuit identified a third factor, "degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her right and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate."  However, in *Mandel v. M&Q Packaging*, 706 F.3d 157, 165–66 (3d Cir. 2013) (clarifying that "permanency is not required to establish a continuing violation" in the context of a Title VII case.)

[69]  *Cowell*, 263 F.3d at 295.

[70]  Docs. 39, 42.

[71]  Doc. 43 at ¶ 4; Doc. 44 at ¶ 1.

after a non-defendant PA ordered a second MRI of his shoulder.  Reed then filed

his action on February 8, 2018, "once he actually knew of [his] injury which was

confirmed in March 2016 by MRI."[72]

Unfortunately, a diagnostic confirmation of what Reed already "knew," or

suspected, for the past nine years was not required for the accrual of his Eighth

Amendment claim of deliberate indifference to his medical needs.[73]  The law

provides that Reed's medical claims accrued when a reasonable person knew, or

should have known, of his injury.  According to Reed, "[d]espite [his] complaints

of severe pain," PA Koltay, Dr. Symons and CHCA Williams refused to send him

to a specialist between 2007 and 2016.[74]  Reed disagreed with the Medical

Defendants' lack of thoroughness in their examination, diagnostic evaluation,

treatment of his shoulder, and lack of a referral to a specialist each time he was

seen by Dr. Symons or PA Koltay between 2007 through 2016.  Reed had all the

facts necessary to put him on notice of his need to investigate and protect his

Eighth Amendment claim long before February 11, 2016.[75]  As such, any claims

concerning Defendants' alleged violation of his constitutional rights premised on

events occurring prior to February 8, 2016, two years prior to the date he filed his

---

[72]  Doc. 41, ¶ 4.

[73]  *See Wallace*, 549 U.S. at 391.

[74]  Doc. 22 at ¶¶ 7–10.

[75]  *See* Doc. 52 at 17 ("From 2010 to 2016 no medical treatment … I am being discriminated against and also being retaliated against for addressing the (sic) of my shoulder injury which I knew needed surgery.").

complaint, are time barred.  Specifically, Reed's Eighth Amendment claim based on Defendants' alleged deliberate indifference to his 2007 shoulder injury is dismissed as time barred.

Moreover, assuming without deciding for the purposes of this memorandum only, that Reed's February 22, 2016 Grievance, No. 614614, was timely filed for the purposes of exhaustion of his administrative remedies, he does not allege the personal involvement of any Defendant in treatment decisions occurring after 2010.[76]  This grievance simply challenges the treatment Defendants rendered him, or failed to provide him, since 2007.  More importantly, it does not assert any actions taken by Defendants during the applicable statute of limitations period, from February 8, 2016 to February 8, 2018, with respect to the treatment of his shoulder.  Accordingly, Reed's pre-February 8, 2016, Eighth Amendment claims against the named Defendants are duly dismissed.[77]

**C.   Reed's Remaining Eighth Amendment Claim is Subject to Dismissal.**

In the SAC, Reed also brings post-February 8, 2016 Eighth Amendment medical claims pursuant to 42 U.S.C. § 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory,

---

[76]  Doc. 22 at 10.

[77]  The Court notes that not all of Reed's § 1983 claims are barred by the statute of limitations. The following claims remain and will be addressed *infra*:  (1) the delay in scheduling his surgery; (2) delay in starting his physical therapy; and (3) the alleged interference with Reed's access to the courts (venda card and denial of medical records.

> subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."[78]  "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[79]

The Eighth Amendment "requires prison officials to provide basic medical treatment to those [individuals who are] incarcerated."[80]  "In order to state a cognizable [medical] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."[81]  "[T]o succeed under these principles, plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious."[82]

---

[78]  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).
[79]  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).
[80]  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[81]  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).
[82]  *Rouse*, 182 F.3d at 197.

"[D]eliberate indifference describes a state of mind more blameworthy than negligence," and it is clear that mere negligence is not actionable as a constitutional claim.[83]  Deliberate indifference requires that prison officials know of an excessive risk to an inmate's health or safety and affirmatively disregard that risk.[84]  This standard affords considerable latitude to medical professionals within a prison to diagnose and treat the medical problems of inmate patients.[85]  Where a prisoner disputes the adequacy of treatment received, "courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."[86]  Some of the more common situations in which "deliberate indifference" has been found include:  (1) defendant's denial of reasonable requests for medical treatment, (2) refusal to provide medical care when a defendant knows it is needed, (3) a delay in providing medical care for non-medical reasons, and (4) interfering with an inmate's receipt of recommended treatment for a serious medical need.[87]

Here, as previously noted, Reed's claim that Defendants violated his Eighth Amendment rights with respect to the diagnosis and treatment of his March 2007 shoulder injury are barred by the statute of limitations.  However, his claims that

---

[83]  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).
[84]  *Farmer*, 511 U.S. at 835, 837–38 (1994); *Giles v. Kearney*, 571 F.3d 318, 330 (2009).
[85]  *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979); *Little v. Lycoming Cnty.*, 912 F. Supp. 809, 815 (M.D. Pa. 1996).
[86]  *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotations and citation omitted).
[87]  *Pearson v. Prison Health Services*, 850 F.3d 527, 538 (3d Cir. 2017).

fall within the applicable statute of limitations, those arising from events following his February 2016 referral for a second MRI, are not barred.  That said, these claims also do not support an Eighth Amendment claim against the Medical Defendants.

The SAC details that in February 2016, following ongoing complaints of shoulder discomfort, medical staff referred Reed for a second MRI of his shoulder, which he received in March 2016.  Once the MRI revealed damage to Reed's rotator cuff, the prison medical providers referred him for a surgical consult with Dr. Sobolewski as described above.  Three months after Dr. Sobolewski indicated surgical repair of Reed's rotator cuff was needed, it was duly repaired.  Two months after surgery, Reed commenced a program of physical therapy. [88]

These actions, as pled by Reed, constitute a pattern of treatment for his shoulder injury.  To the extent Reed disagreed with this course of treatment, the United States Court of Appeals for the Third Circuit has held, "mere disagreement as to the proper medical treatment" does not create an Eighth Amendment medical claim.[89]  Put another way, when an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not

---

[88]   *See* Doc. 22, ¶¶ 11–12, 17, 23, 25, and p. 20.
[89]   *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979); *Little v. Lycoming Cnty.*, 912 F. Supp.809, 815 (M.D. Pa. 1996).

exist.[90]  Notably, medical negligence and malpractice are also insufficient to state

an Eighth Amendment claim.[91]

      While deliberate indifference can be shown by prison medical care providers

or prison officials for intentionally denying, delaying, or interfering with medical

care once prescribed, Reed's allegations that any of the Defendants delayed

scheduling his surgery or physical therapy fall short of an Eighth Amendment

violation.  Clearly Reed would have preferred not to wait three months for his

surgery once Dr. Sobolewski recommended it; however, he fails to allege that the

delay was due to anything other than mere scheduling issues.[92]  Reed fails to allege

in the SAC that Medical Defendants or Dr. Sobolewski intentionally ignored

scheduling his surgery, or delayed scheduling his surgery for non-medical reasons

knowing the delay would cause him substantial harm.  He also fails to allege

Medical Defendants ignored his complaints of pain or otherwise denied him

medical care for his shoulder during this time.

      Furthermore, Reed does not plead any facts that Commonwealth Defendants

believed or concluded that Reed was not being treated appropriately by the

Medical Defendants or Dr. Sobolewski when setting his surgery date. [93]  Based on

---

[90]  *Id.*

[91]  *See White v. Napoleon*, 897 F.2d 103, 108–10 (3d Cir. 1990) (citing *Estelle*, 429 U.S. at 106.)

[92]  Doc. 22 at 12 (CHCA Williams advised Reed on September 5, 2016, that he was "waiting for the surgeon to give us a date.")

[93]  Where non-medical prison officials are aware that prison medical care providers are treating an inmate, absent a reason to believe that medical staff are mistreating, or failing to treat, the inmate, prison officials are "generally justified in relying on the expertise and care of prison

the allegations of the SAC, there are not facts from which the Court can reasonably infer that any of the Defendants consciously disregarded Reed's surgical need for the repair of his shoulder and then delayed his treatment based on this awareness.

Reed also fails to allege an Eighth Amendment claim against Dr. Sobolewski regarding the inability to commence physical therapy one week after surgery.[94]  As pled, Dr. Sobolewski prescribed physical therapy for Reed.  At most, Reed alleges that Dr. Sobolewski was negligent in not following up with Medical or Commonwealth Defendants as to whether his physical therapy orders were timely followed.  However, claims of medical malpractice and negligence do not raise issues of constitutional import.[95]  The SAC is devoid of any averments that the Medical or Commonwealth Defendants acted with the necessary Eighth Amendment *scienter* when providing him physical therapy outside of the timeline allegedly set by Dr. Sobolewski.  There is no constitutional requirement that Medical Defendants order physical therapy per Dr. Sobolewski's direction.  At most, the later than expected commencement of physical therapy demonstrates Medical Defendants' disagreement with Dr. Sobolewski's orders, which does not state a cognizable Eighth Amendment claim.

---

medical providers" and are not chargeable of deliberate indifference to a prisoner's claim of medical mistreatment under the Eighth Amendment.  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

[94]  *Id.* at ¶ 25.

[95]  *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ("It is well–settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'").

It is well-established that a doctor's disagreement with the professional judgment of another physician is not actionable under the Eighth Amendment.[96] The fact that Reed was under the direct care of the prison physician's following his shoulder surgery and did not see Dr. Sobolewski until mid-December 2016, does not demonstrate deliberate indifference on the Medical Defendant's part by not initiating physical therapy one week after surgery.  Additionally, when a patient should undergo the next stage of treatment, such as physical therapy, is a medical decision only physicians are qualified to provide, not non-medical prison staff such as the Commonwealth Defendants.  In sum, Reed has not plead a plausible Eighth Amendment claim based on the delay in providing him physical therapy against any of the Defendants.

For these reasons, the Court will grant the Defendants' motions to dismiss as to Reed's Eighth Amendment claims concerning the alleged delay in scheduling his surgery and post–operative physical therapy.

### D.    Reed's Access to Court Claims.

It is well-settled that "prisoners have a constitutional right of access to the courts."[97]  Prisoners are not necessarily "capable of filing everything" but have a right of access "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."[98]  The right "must be adequate,

---

[96]  *See White*, 897 F.2d at 110.
[97]  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).
[98]  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

effective and meaningful and must be freely exercisable without hindrance or fear of retaliation."[99]

Because an access to the courts claim "is ancillary to the underlying claim," a plaintiff "must identify a 'nonfrivolous,' 'arguable' underlying claim" that was lost.[100]  The complaint "must describe the underlying claim well enough to show that its 'more than mere hope,' and it must describe the 'lost remedy.'"[101]  "[A]n inmate must allege actual injury, such as the loss or rejection of a legal claim."[102]

Here, Reed alleges the Commonwealth Defendants' temporary delay in providing him with his second "venda card," and denying him copies of his medical file, interfered with his access to the courts.[103]  These claims, as pled, do not demonstrate Defendants' interference with Reed's access to the courts.  The SAC is devoid of any facts or description of the merits of a nonfrivolous or arguable underlying claim or a lost remedy due to the absence of his "venda card" or a copy of his prison or Somerset Hospital medical records.  Clearly, to the extent sought to raise a condition of confinement claim with respect to his post-second MRI care, Reed was able to do so in both state court and this Court.  Also, absent from the SAC is an identifiable injury.  Because Reed has not alleged any facts

---

[99]  *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981)(internal citations omitted).
[100]  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quoting *Lewis*, 518 U.S. at 353 & n.3).
[101]  *Id*. at 416–18.
[102]  *Oliver v. Fauver*, 118 F.3d 175, 177 (3d Cir. 1997) (citing *Lewis*, 518 U.S. 343).
[103]  Doc. 22, ¶¶ 27–31.

concerning the merits of his underlying lost claims, or indicate that he suffered an actual injury, he fails to state an access to the courts claim.[104]

**E.    Reed Fails to State a § 1983 Claim against Somerset Hospital.**

According to the SAC, Somerset Hospital is a Pennsylvania corporation providing community medical care.[105]  Reed claims Somerset Hospital took his money but failed to send him copies of his hospital medical record.

A plaintiff seeking relief under Section 1983 against a private corporation must show that a policy or custom caused the alleged deprivation of rights.  Here, Reed fails to identify a policy or custom of the hospital that violated his constitutional rights.  At most, he asserts a property claim against the hospital for failing to provide him with copies of his medical records after he paid the $13.10 copying fee.  Reed has consequently failed to state a federal claim concerning Somerset Hospital.

Pennsylvania has a statute that ensures the rights of patients to access their own medical records.[106]  To the extent Reed claims Somerset Hospital has violated this right by refusing to send him copies of his medical records, he asserts a state law claim.  In the absence of any federal basis for Reed's suit, the Court declines to exercise supplemental jurisdiction over this state claim, if indeed the claim against

---

[104] *Presbury v. Wetzel*, 789 F. App'x 294, 295 (3d Cir. 2020).
[105] Doc. 39-2 at 6.
[106] *See* 42 Pa. C.S. § 6155.

Somerset Hospital is actionable at all.[107]  Accordingly, Reed's state claim, should it exist, will be dismissed without prejudice.

**F.    Reed's FTCA Claim**

The Federal Tort Claims Act ("FTCA") is a limited waiver of the federal government's immunity from tort lawsuits, allowing plaintiffs to sue the federal government "for money damages … [for] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[108]  The only proper defendant to an action under the FTCA is the United States.[109]

Although Reed invokes the FTCA in the conclusion of the SAC,[110] he does name the United States as a defendant.  Accordingly, Reed's FTCA claim will be dismissed.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will grant the moving Defendants' motions to dismiss in their entirety.  Additionally, all claims against Valerie Senko

---

[107]  *See* 28 U.S.C. § 1367(C)(3).
[108]  *See* 28 U.S.C. § 1346(b).
[109]  *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008).
[110]  Doc. 22 at 7.

will be dismissed pursuant to Fed. R. Civ. P. 4(m) due to Reed's failure to provide sufficient information to effect service on this individual.  The Court will dismiss Reed's federal claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and I decline to exercise supplemental jurisdiction over his possible state law claim.

The Court is required to give Reed leave to amend his second amended complaint "unless amendment would be inequitable or futile."[111]  Here, the Court previously screened Reed's amended complaint and dismissed it in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), but granted him leave to file a second amended complaint; the operative complaint in this action has not withstood Defendants' Rule 12(b)(6) motions.

The Court will not grant Reed a third opportunity to amend his federal claims because further attempts at amendment would be inequitable and futile.  *See Jones v. Unknown DOC Bus Driver & Transp. Crew,* 944 F.3d 478, 483 (3d Cir. 2019) (Where inmate plaintiff "has already had two chances to tell his story … giving him further leave to amend would be futile.")

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[111]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).